Case number 14-3828, Christopher J. Moffat et al. v. Wal-Mart Stores Incorporated et al. Argument not to exceed 15 minutes per side. Mr. Murray, you may proceed for the appellants when you're ready. Good morning, Your Honors. May it please the Court, my name is Michael Murray. I do represent the appellants. I would request to reserve three minutes of my time for rebuttal. Your Honors, the appellants Christopher Moffat, Clarissa Thompson, and Patricia Schmidt were by all accounts excellent, hardworking, dedicated employees of Wal-Mart. They each regularly received very good performance evaluations throughout their years. Each of them won numerous awards from Wal-Mart for going above and beyond in their performances, above and beyond the call of duty. Each testified that they loved their jobs at Wal-Mart. They were dedicated to the company, and they were distraught when they were summarily fired in June of 2010 by 31-year-old Joseph Theobald, the manager of the Asset Protection Division. You know, the age of risky theater is something that does seem to get some emphasis in your brief. Is it actually relevant to any legal issue, or is that just a background fact? It's probably more a background fact than anything particularly significant, but I think it is worthy of note. Yeah, no, I'm not criticizing. I just wanted to make sure I wasn't overbooking. Correct. He was a home office employee. He reported to Bentonville. That's where he got his paycheck. He was imbued in the Wal-Mart culture. But yes, I agree with Your Honor that it's worthy of note, but not particularly significant to the legal issues. They had combined 34 years at Wal-Mart. Patricia Schmidt, 16, Clarissa, 10, Chris Moffitt, 8. They were 54 years old, 62 and 59 when they were discharged. Two of them were immediately replaced by a 19-year-old and a 21-year-old. Patricia Schmidt's duties were taken over by a 61-year-old manager of another department who expressed hesitation about taking over the additional duties, even suggested that she would quit. She did take it, however, and about three months later, she ended up retiring, and her position then was filled by a 26-year-old. We respectfully submit that the district court erred in granting summary judgment against the appellants on their state and federal age discrimination claims. As you know, the stated reason for their termination was that they violated the company's gift and entertainment policy against employees accepting gifts from vendors. And that, of course, was based upon the fact that they took home some dying plants that were being thrown in the garbage by a vendor's delivery man. He had tossed them in a shopping cart and asked Clarissa Thompson to throw them in the trash for him. And when she said she thought some of them might be saved, he said, go for it. And as a consequence, she and the other two plaintiffs openly, in full view of the security cameras, without thinking they were doing anything wrong, took a few of the plants and bagged them and took them home. Debbie Jenkins, the asset protection coordinator who launched the investigation of the plaintiffs, and Joseph Theobald, her boss, who ultimately was the primary decision-maker here, both of them testified that an employee who retrieved something from the trash and took it home would not violate the gift and entertainment policy. An employee who was asked by a vendor to throw something in the trash would violate no policy. If on the way to throwing something in the trash at the request of a vendor, the employee decided, I think I'll take it home with me, both of them testified that that would not be a violation of the gift and entertainment policy. It only becomes a violation, they said, if the vendor, after telling them, would you take it in the trash, and someone says, well, I could be saved, go for it, and then they take it home, that becomes a violation of the policy. Now, both Debbie Jenkins and Mr. Theobald testified that Walmart has a progressive discipline policy called coaching for improvement. It has three types of discipline. There's a job performance type, there's misconduct, and gross misconduct. It's only gross misconduct that requires and permits termination. And nowhere in the gifts and entertainment policy, they agreed, or the coaching for improvement policy, is it stated that a violation of that policy is characterized as gross misconduct. They both agreed that a violation of that policy does not automatically require discharge. And indeed, the second level of the progressive policy for misconduct includes violations of company policies, and it precludes termination for those violations. If it's misconduct, but not gross misconduct, the requirement is that some other discipline besides discharge needs to be enclosed. Was gross misconduct defined somewhere in this policy? Yes. They give examples of both gross misconduct and of misconduct. What's just misconduct if this is gross? Misconduct could be things like unauthorized use of company time, personal business on company time, harassment, insubordination, unauthorized sale of alcohol, tobacco. That's misconduct? That's misconduct. What if it's gross? Improper release of prescription medications from the pharmacy, unauthorized use of health information. That's misconduct. Not subject to termination. Gross misconduct, and by the way, gross misconduct says, there's a list that says, which are usually classified as gross misconduct and may result in immediate termination. Even when it's gross misconduct, it isn't automatic that there's a termination. Theft, dishonesty, compromised integrity, fraud, those are some of the things that are classified as gross misconduct. I don't recall, did Walmart in this instance of your clients flag what species of gross misconduct they thought taking the clients home was? Mr. Theobald testified in his deposition that he regarded it to be an integrity violation. But he agreed that a violation of the gift and entertainment policy is not always gross misconduct, not always subject to termination. But at his deposition, that's what he characterized it as. The case law is clear about one thing, and that is that unreasonableness of the decision, the fact that it might seem to have no basis in fact, in reality, the fact that it doesn't, that the jury could find that it really wasn't the reason for the termination, or that it was insufficient to justify the termination, all of that can be used by a jury to infer pretext. As recently as last year, this court in the Pearson v. Quad case made that clear. We think that these facts alone, before I even get to the comparators, would be sufficient to permit a jury to infer pretext, and to conclude, at the very least, that the most that could have and should have happened to these individuals was something less than termination, and that their termination on these facts was so unreasonable that it leads to the inference of pretext. But then we have the comparison evidence that was amassed in the record. Testimony that this was a practice that had been ongoing for several years with this vendor. That at the end of the season, he'd come in and he'd take out the dying plants, and employees would be allowed to take them home. No one ever got disciplined for this. This was something that was not out of the ordinary at this store. In addition to that, there was evidence that other employees over the years had received so-called gifts from vendors at the store. Samples of mouthwash, pens handed out, envelopes from American reels, lanyards from playstations, gum. April Walker, who was an acting store manager who participated in the decision to fire the plaintiffs, agreed with that at her deposition. Brian Donagan, an assistant manager, submitted a declaration acknowledging that lanyards had been distributed to the employees. He distinguished it and said it wasn't a violation of the gift and entertainment policy because it had something to do with promoting the product. But the point is, there were plenty of instances in which trinkets, samples, other things were handed out to employees over the years. Younger employees, as well as employees who were not young. And no one ever got disciplined. In fact, no one ever got disciplined for violating the gift and entertainment policy. My recollection is that you said there were three younger employees who did the same thing, i.e., take the plaintiffs. Yes, yes. And if I recall, Walmart's response is that, I guess, you insufficiently identified who those people are. What's your response to that the first day? This ultimately goes to whether we could look at them as somebody who was treated with respect to the plaintiffs themselves. Sure. Well, the plaintiffs did give names in their depositions. They gave a number of names. Some of them were first names. Others were identified as to which department. Others were identified in the lawn and garden department. And the plaintiffs testified that they were younger, both in their deposition and in their answers to interrogatories. And I don't think it matters whether or not there was clear evidence that the comparators were under 40. In fact, I think the Sixth Circuit several years ago said the main thing that matters is not whether the comparator was in or outside the protected class, but whether age mattered when the adverse employment decision was taken against the plaintiffs. And we do have plenty of evidence of comparators whose actual ages are in the record, who engaged in far more egregious conduct, but were not fired. We have a 20-year-old who received a verbal coaching for passing a bad check. We have a 19-year-old who had been there only four months and had already been verbally disciplined about attendance and punctuality. There was a Verizon demo phone missing. Somebody saw him take it out of his pocket. And they discovered later that he had been using it to make personal calls when they did the call history. But he wasn't fired. There was a 19-year-old who was just given a written coaching when he used his discount card to ring up two sales for a friend or family member, so that they could get his discount, which was clearly an integrity issue. But he was just given a written coaching. A 25-year-old who had been disciplined twice previously was given a decision day for clocking in and then going to the break room to have a cigarette and talking on the cell phone. So he was being paid for not working, which is an integrity violation. Well, Mr. Murray, I think you covered a fair amount of ground. Thank you very much. Good morning. May it please the court, my name is Allison Day, and I represent the appellees in this case of Walmart. This case is not about what is trash and what is not trash. It's not about whether the decision to terminate the appellants was unfair or harsh. It's about whether the decision-maker, Market Asset Protection Manager Joe Theobald, terminated the appellants because of their age. Now, the appellants attacked Walmart's policy and her interpretation of it. But the Gifts and Entertainment section of Walmart's Statement of Ethics clearly prohibits accepting any gift from any supplier, not only those people that the associate believes may be trying to influence business or exert influence, as the appellants have argued. It's an important part of Walmart's culture that the associates avoid even an appearance of a conflict of interest. Well, I would assume it's also forbidden in their guidebook for the employee to use his discount card for people, friends and family, right? Oh, absolutely. And that, at least as the record comes to us, we have to assume that happened and the person did not receive nearly the discipline that the plaintiffs received here, right? Yes, we assume that happened. That's an entirely different policy. And the Sixth Circuit decisions have been clear. You know, while you don't have to have the exact same conduct, all the cases cited by plaintiffs still involve violation of the same policy. I guess, I mean, are we talking about a different, you know, 2.7 in the book as opposed to 2.3 and things you can't do? Well, they're entirely different policies. One involves gifts in the entertainment section, which involves, among other things, accepting gifts from suppliers. Another policy, entirely different policy, relates to use of a discount card. And it's never been the requirement that it be similar misconduct. You know, well, it doesn't have to be the exact same conduct. It's never been read by the circuit so broadly as to implicate two entirely different policies. What about, I mean, they do have testimony that, I mean, if we want to get into, you know, specific policies, that other people were taking the plants out, younger people, and they didn't achieve the same results. Well, there's absolutely no management knowledge that those three employees whose ages are not even in the record. Just assuming for a moment that they're – Could the jury believe that testimony? That they didn't? They could, but they couldn't possibly find that management knew, let alone that Totheo knew. Because there's no evidence of that. Actually, every appellant admitted that they have no reason to believe that management knew about the three employees in question who allegedly took the plants home. There's also nothing in the record saying that a vendor told them they could take the plants home, and they did. There was testimony in the depositions. And, again, these three people were brought up for the first time in discovery. They were not raised at any point at the time or during these people's deployment. We don't know when this happened. We don't know the ages of the people. All we know is that in their depositions, appellant identified people who they believe were younger, who they also believe may have taken the plants home. No evidence that management knew. That's where it all falls apart. And, well, what about all these layers of discipline, the fact that these folks get the ultimate penalty, and apparently nobody else was getting treated that way? I have to say, I'm just going to tell you, this thing strikes me as bizarre. Half-dead plants, infestation of bugs, all of this. And that's treated as, first of all, a violation. And, secondly, I'm just telling you, it just seems like they got treated very differently than everybody else was. I just want to be candid and say there were two more in response. Oh, well, I think you raised several issues there. I guess the first being that it seems like you believe that the penalty was harsh. And what else could they have done that would be harsh? It was harsh. It was the harshest penalty, right? Well, I think that dealing with the issue of it being harsh first, in order to find pretext, there has to be some irregularity or being so unreasonable. Here, the district court correctly found that policy clearly provides that termination can occur from a violation of this policy. It's clearly an integrity issue. The Coaching for Improvement policy says that integrity issues are considered gross misconduct and can result in immediate termination. Now, was Joe Theobald required under the policy to terminate these three people? No, he wasn't. But there's plenty of precedent that I'm sure you're all aware of that the judiciary is not to sit as a super person on the board. And I know you're not your owner, but as far as it being overly harsh, that is really not the analysis here. The analysis is whether similar situated people were treated more favorably. And here, there isn't anyone similarly situated because the three people who have been identified as potentially taking plans home, there's no connection of management knowledge. Not to Theobald knowledge, no management knowledge at all. And the plaintiffs or the appellants say here, well, he was aware that younger people had taken plans home. And that's simply not true.  He was aware that at least one of the appellants in their statement said, sorry, exactly what she said, that she was told by an associate that other associates had been doing this for years. That's what they had. No names, no ages. What about the testimony that they were getting small gifts from other defendants? Well, there's kind of two categories of things there. One category, I think it was pointed out specifically, as a promotional or demo item. The statement of ethics is very clear that accepting these items does not violate the policy. And there are several hypotheticals given that we cited in the briefs. Promotional items are gifts that they are unrelated to the product and for the associate's personal use. So there's also a hypo given in the policy that vendors can give out samples if they're given to both associates and customers. So we've got the lanyards. That's what they hang their name tags on. So if they're promoting a new Crayola product and they hang their name tag on a lanyard, that's not something for the personal use of the associate. That's when they're putting their name tag on at work. That's what they've identified as far as a demo item. Then you move over to the pens and envelopes. And assuming they're not demo items, we don't know. We don't even know who took them, let alone what age they are. Let's just say that there are extra envelopes being given out. You know, the cards are gone. That would potentially be a violation of policy. I think we can all agree on that. The problem with the appellant's argument here is that they haven't identified who took the pens and the envelopes or that Joe Theobald was aware that all of this was going on. And we're not trying to argue here to be clear that the same supervisor requirement is inflexible. And the district court recognized that it's not inflexible. But there has to be some reason to vary from it here. Well, there was even the initial question whether this was a gift. You have people making very odd distinctions. You have testimony of your people saying, no, it wouldn't be a gift if they took it out of the trash. Right. Okay. So there's even a question of whether they violated the policy. Well, I guess I disagree with that. I think the distinctions are distinctions that are laid out in the statement of ethics policy. They are not distinctions that we're making up as we go along. Also, help me with where in your statement of ethics policy there is a difference between taking it out of the trash or taking it on the way to the trash. Well, actually, Joe Theobald testified that the decision-maker was only about taking it out of the trash. And the distinction is it's not a gift. He didn't say it wouldn't violate any other policy. He didn't say it was fine. He said the question is would this violate the gifts and entertainment policy. Well, of course not. It's not a gift. I don't get it. Help me. Well, one is a gift. One is go ahead and take this. It was the vendor's property. So it's the vendor's property at that point, and it's a gift. Joe Theobald is saying if you find something in the trash. No, if you're saying I am abandoning this. I do not want this. It's dead. Do me a favor and throw it out. No one is going to be charged for it. Right. You don't get charged for it. They eat it. That's the situation. So they were writing it off. He didn't want it. It was headed for the trash. What is the difference between saying will you take this to the trash for me and, oh, you don't want to take it to the trash? You think it's on its last legs and you think you can save it? Go for it. It's still trash in my mind. Okay. Well, I think that what we're getting into now is interpreting the policy, which, you know, Walmart, it's their policy, and they should be given deference in how to interpret it. Well, I'm asking you, I mean, I can testify that taking it out of the trash wouldn't be a violation. You're a person. You're hiding it. Absolutely. Okay. So a jury is allowed to, you know, if something just doesn't make sense, then it falls under the category of it's not the real reason, pretext. So I'm asking you, what is the difference? Well, the difference is that Walmart is trying to avoid the appearance of impropriety where suppliers are giving, even a cup of coffee came up in the case. It doesn't matter about the value of what we're talking about. The problem in Walmart's eyes is the gift. That's the part that creates the conflict of interest, is the giving. It's that a supplier here is making a gift, and they aren't going to determine, well, that gift's not worth as much. No, but that's why I'm asking you, what is the difference if it were in the trash? Because it's quite clear that it was headed for the trash. That's not what happened here. Okay. And maybe I don't understand the facts. I thought the facts were that the representative of the company said, these are no good anymore. Please throw them away. And this person, who obviously doesn't want to throw away a living thing, says, I think some of them could be saved. And he says, go for it. But they were headed for the trash. Where's the gift? Because it was the vendor of property. The vendor said, go ahead and take it home. The vendor had already asked that it be put in the trash. You're not stating the facts incorrectly. Okay. Help me understand what the difference is. The difference is there's a comparison in propriety when there's a gift. Walmart views this as a gift. They're entitled to interpret their policy. And under the words of the policy, their interpretation isn't reasonable. As noted by the district court, the policy says you cannot accept a gift. They accepted a gift.  I mean, the vendor said, take this to the dumpster. And I think I shared Judge White's question about why shouldn't a jury be able to treat it as a gift in the trash? Especially since one of your store or I don't know what it was, maybe it was feels, the decision makers said, no, it wouldn't be a gift if they took it out of the trash. You did say that because it wouldn't. It wouldn't be a gift at that point, but it was a gift. And that's what they were looking at. The testimony was they saw the video and they said, well, you know, what's going on here? Are they stealing property? They interviewed them and said, well, no, they weren't stealing. This was still the vendor's property. The vendor gave it to them. Why is it a gift at this point? The vendor says, please throw this in the dumpster. And then they end up keeping the plans. Why is it a gift when the vendor has said, please put this in the dumpster? Because the vendor said, go ahead and take it. But he said, why is it irrelevant? Because it creates an appearance of impropriety and an appearance of a conflict of interest. Why does it create that appearance when he just said, put this in the dumpster? Well, because it's still a gift. At the end of the day, I guess I'm not understanding what the concern is. What I'm asking for are reasons for the conclusion that you're offering that it's a gift, not the conclusion itself. Because it was something that was the vendor's property. The vendor owned the plants. And the vendor was saying, go ahead and take them home. So an associate whose job is to take care of the plants, to ensure the safety of the plants, could potentially have an appearance of conflict of interest if, say, they don't water the plants. Say they say to the vendor, oh, hey, are those going out? Yeah, sure, you can take them home. Walmart doesn't want suppliers giving gifts to their associates. Regardless if they're a supplier. Suppose they had put it in the trash can, and then the conversation happens about, I think I can save this plant. The guy says, go for it. Oh, I think at that point it's a gift because you're saying, go for it. So he put it in the trash? Absolutely. According to what he will say. He said it wasn't a gift because it wasn't given. And what if when he says, go for it, what if they left it there? It's already been, they left it there, but they took care of it there at Walmart. At Walmart's time. I guess I can give testimony on what Walmart would have done under these hypotheticals. All I can tell you is what the decision maker testified to. Is that a gift? If the supplier said, you can take this, and the associate takes it, it's a gift. If the supplier says, throw it out, she puts it in the garbage. She goes, you know, I think this one can be saved. He says, go for it. She picks it out of the garbage. She puts it near her checkout counter. And she proceeds to take care of it every day. I think, in my opinion, that's still a gift because the supplier's saying, take it. They don't want situations where the supplier is telling associates they can have things that don't otherwise qualify under the policy. That's why the policy talks about expired items and discontinued items. They don't want associates taking things from vendors that are expired two days and taking them home. Because then they've got an incentive to move them to the back so these things don't get expired so they can take them home. It's important to their culture to avoid the appearance of impropriety. And so they have a policy that prohibits just this. And it sounds like you guys don't like the policy, but that's what the policy says. And this was a gift, as the appellants admit. And there's no dispute about that. And the distinction about, you know, was it dead, was it trashed, I think really misses the point of what Walmart's trying to accomplish with the policy and why they consider this kind of conduct an integrity issue at the end of the day. It's because they don't want people, their associates, accepting anything, regardless of the value. And that's what the policy says. And in the plain language of the policy and the training that the associates here, the appellants admitted to having taken, the hypotheticals given in the training make it very clear that accepting anything from a supplier, other than the exceptions that are outlined in the policy, is considered a gift. And I really don't see this any different than an expired piece of food. Bananas, if it was, you know, some of those are paid for scan items as well, some of the produce. Okay. Well, I think we have your argument. Okay. Thank you very much. Thank you. We appreciate it. Thank you, Your Honor. The only last point that I would make is the one that has already been mentioned, and that is this is sophie judgment, so the question is, could a jury take these facts and permissibly find age discrimination in pretext? And we respectfully submit that a jury could permissibly make those findings. Well, let's talk about the other people that took facts. Yes. What was the evidence that you put forward? Patricia Schmidt told at her, when she was interviewed as to what happened, she specifically told Debbie Jenkins, other people have done this over the years. This is a common practice. That was part of the investigation. That file went to Mr. Theobald. Mr. Theobald then was in possession of information that this had been a longstanding practice. Did they investigate that? Did they inquire? Did they try to find out whether there were any other employees who had done the same thing the year before or the year before that? No. They totally did nothing with the information. This wasn't just information that she gave them on deposition. This was when they called her into the office, and she was shaking. Okay, so was she able to get any information? Yes, yes. Well, they didn't. The point is Debbie Jenkins didn't ask her for any follow-up, but at her deposition she gave the answers to the questions by Walmart's lawyers as to names, people in the lawn and garden department. She gave specific names of people who had done this. Yes? It sounds like you don't have evidence that management knew about those events at the time or that management knew kind of on a rolling basis that this was a common practice at the school. Well, except to the extent that the testimony was this was done openly, it was done in full view of everyone, and that you would think management, inferentially, would be aware of the practice because it was so longstanding and because it wasn't something hidden because no one thought they were doing anything wrong. I'll give you an example. Christopher Moffitt, in his deposition, he understood the gift and entertainment policy to a certain extent because he testified that early in his career a customer tried to give him a tip for being so helpful to him, and Christopher says, No, I can't take it, and the customer insisted. Christopher took that tip to the store manager and said, Here, this customer wanted to thank me for service, and I know I'm not allowed to take money from a customer, and so he turned it over. But he never thought twice when it came to garbage and plants. Never in a million years did he think he would be violating any gift and entertainment policy. So these were good employees who cared about Walmart, and a jury could find that they were impermissibly discharged. Thank you. Thank you both for your evidence. Case will be submitted. The court may call the next case.